Town of Stow *vs*. Lloyd D. Pugsley & others
(and a companion case[1]).

Middlesex.    May 5, 1965. — June 9, 1965.

Present: Wilkins, C.J., Whittemore, Cutter, Kirk, & Reardon, JJ.

*Equity Jurisdiction*, Zoning, Declaratory relief. *Zoning*, Enforcement, Size of lot, "Main building," Nonconforming use or structure. *Mandamus*. *Junk*. *Municipal Corporations*, By-laws and ordinances.

A suit in equity by a town under G. L. c. 231A lay for declaratory relief to resolve a controversy between the town and the owners of a parcel of land and their son as to whether a building being constructed by the son on the parcel violated the town's zoning by-law and whether a license for the building under a general by-law of the town was required.    [331]

After a town had brought a suit in equity seeking declaratory relief respecting the propriety of a certain building under the town's zoning by-law and seeking injunctive relief, a mandamus proceeding brought by neighbors of the building to compel enforcement of the zoning by-law by the appropriate town officers should be dismissed.    [331]

A license for a building proposed to be used as a motor vehicle repair garage was not shown to be presently required under a by-law of the town providing that "No person shall collect, deal in, or keep a shop for the purchase, sale or barter of junk, old metals or second hand articles" unless licensed by the selectmen.    [331]

A provision of a town's zoning by-law, that "Each main building" should be "erected on a lot" having a specified minimum area and street frontage meant that such a lot should be provided for each "main building."    [332]

Under a town's zoning by-law requiring a lot having a specified minimum area and street frontage to be provided for each "main building," a certain substantial cement building to be used as a motor vehicle repair garage was a main building and could not be validly erected on a lot which had less than twice the required minimum area and street frontage and which already had on it a dwelling also constituting a main building.    [332–333]

Even if doing some automobile repair work in a barn on certain premises and having parts of automobiles, tires, grease, and "equipment and stuff" stored there had the status of a preëxisting nonconforming use with respect to the town's zoning by-law, subsequent erection and use of a substantial cement building on the premises for the purpose of a motor

---

[1] The companion case is Bradford E. White & others *vs*. Board of Selectmen & others.

vehicle repair garage would be different in kind from the earlier use and would not have the status of a preëxisting nonconforming use by reason of the earlier use. [333–334]

BILL IN EQUITY filed in the Superior Court on June 12, 1963.

PETITION for a writ of mandamus filed in the Superior Court on July 24, 1963.

The cases were heard by *Noonan, J.* The plaintiff and the defendants Pugsley appealed from the final decree in the suit in equity. The respondents Pugsley appealed from orders in the mandamus case.

*Thomas R. Morse, Jr.,* Town Counsel, for the Town of Stow.

*Jerome Daniel Goodman* for Lloyd D. Pugsley & others.

*Francis L. Swift* for Bradford E. White & others.

WHITTEMORE, J. The town of Stow on June 12, 1963, brought a bill for declaratory relief under G. L. c. 231A. The defendants are: (a) Wylie Pugsley and his wife Leajean, as the owners of a parcel of land on the westerly side of Gleasondale Road containing about 50,000 square feet of land; (b) their son Lloyd D. Pugsley; (c) four abutting property owners.

The controversy alleged in the bill relates to a cement building being constructed by Lloyd Pugsley on his parents' land for use as a motor vehicle repair garage. The issues were whether a license was required under the general by-law applying to the "sale or barter of junk, old metals or second hand articles" and whether the building violates the zoning by-law. The bill included a prayer for injunctive relief.

On July 24, 1963, the four owners of abutting property brought a petition for a writ of mandamus against the selectmen as the enforcing officers (and, by motion, against the three Pugsleys) praying for an order that the selectmen bring a bill in equity to enforce the zoning by-law and that an enforcing injunction be issued.

After a single hearing on the two proceedings the trial judge entered a decree dismissing the bill for declaratory relief without prejudice, and entered in the mandamus pro-

ceeding orders whereby an answer in abatement of the Pugsleys was "disallowed" and a writ of mandamus was to issue requiring the selectmen to proceed in equity to enjoin violation of the zoning by-law by the Pugsleys.

1.   The bill for declaratory relief was properly brought and should not have been dismissed.   Controversies in respect of the enforcement of zoning by-laws or ordinances are appropriate for resolution under G. L. c. 231A.   *Noonan* v. *Moulton,* 348 Mass. 633, 637.   Plainly, on the pleadings and the testimony there is a controversy between the town of Stow as represented by the selectmen (the enforcing officers) and the Pugsleys, as to whether the zoning by-law barred the garage building, and whether a permit was required under the general by-law.   See *Attorney Gen.* v. *Dover,* 327 Mass. 601, 606.

It follows that the mandamus petition was subject to abatement.   In effect, the town (the real party in any enforcement proceeding, *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 518) had already undertaken the enforcement that the petition sought to require.   The town had asked to be instructed whether there were violations of the by-laws, and had already invoked the enforcing power given to the Superior Court by G. L. c. 40A, § 22.

2.   The proposed repair garage was not prospectively a violation of art. 6, § 5, of the general by-laws that provides, "No person shall collect, deal in, or keep a shop for the purchase, sale or barter of junk, old metals or second hand articles within the limits of the town, unless licensed by the board of selectmen."   This proposition speaks for itself.

3.   The repair garage is a violation of the zoning by-law.

The by-law was amended in September, 1962, effective October 5, 1962.   The evidence shows that Lloyd Pugsley began the excavation prior to October.   When pressed as to the date of the beginning of construction he testified, "I will say October for my own benefit. . . .   I can't give you a date [in October].   That is why I gave you the month."   There was no testimony that the construction of the building began before October 5, or that it was substantially advanced on that date.   Such work as had been done prior to

October 5, 1962, gave Lloyd Pugsley no exemption under the nonconforming use provision of G. L. c. 40A, § 5. *Brett* v. *Building Commr. of Brookline*, 250 Mass. 73, 79–81. See *Locatelli* v. *Medford*, 287 Mass. 560, cert. den. 294 U. S. 727. General Laws c. 40A, § 11, provides in part, "[T]he beginning of work . . . after . . . notice [of hearing before the planning board required by § 6] has been given or . . . [the] warrant [for the town meeting at which the by-law or amendment is adopted] has been issued, shall not justify the violation of a zoning ordinance or by-law or an amendment thereto subsequently adopted as the outcome of such hearing and in substantial accord with such notice or warrant; provided, the subsequent steps required for the adoption of such ordinance or by-law or amendment thereto are taken in their usual sequence without unnecessary or unreasonable delay." The evidence does not disclose the date of the hearing or of the warrant. There was some testimony that preliminary excavation work began in August, 1962. Our view of the by-law in its form prior to October 5, 1962, is such that we need not determine whether excavation is in law the "beginning of work upon a building or structure" or whether the above part of § 11 is to be construed as making work begun prior to notice of the planning board hearing subject only to the by-law as it stood prior to the amendment.

The by-law prior to October 5, 1962, provided: "Each main building or structure shall be erected on a lot containing not less than forty thousand (40,000) square feet of land and having not less than one hundred fifty (150) feet street frontage." This means that for each main building there shall be a lot not less in size and frontage than stated. The Pugsley lot already has thereon a dwelling house. That is a main building. The answer of the Pugsleys to the bill admits this.[2] Lloyd Pugsley testified that the pur-

---

[2] "[T]he defendant Lloyd D. Pugsley commenced construction of a building on the premises alleged, and . . . at the time thereof there was on said premises a frame building, and they say that said frame building was and is the main building on said premises as referred to and within the meaning of the Zoning By-law of the Town of Stow."

pose of the proposed new building is for use as a repair garage — a place for the "repairing of automobiles." The "foundation area" of the building is forty feet by fifty feet. The building is of cement block construction, with two fifty-five foot "I" beams carrying a tar and gravel roof. This commercial building is also a main building within the meaning of the by-law. The 50,000 square foot lot with a frontage of about 225 feet does not support more than one main building.

The October 5, 1962, amendments do not authorize the construction of this commercial building on this residential lot. These amendments caused § 4, subparagraph 2 (a) and (b) and § 5, subparagraph 6 (a) and (b) to read as set out in the margin.[3]

A further amendment was adopted in February, 1963. No party contends that the by-law as amended in February, 1963, makes the garage a permitted structure, at least without a permissive order under the by-law.[4]

There was evidence tending to show that Lloyd Pugsley at "various times" in the past ten or twelve years had done some automobile repair work in a barn on the premises and

---

[3] "Section 4, subparagraph 2 (a)  No dwelling, or commercial or industrial building, shall be built or placed on a lot containing less than 40,000 square feet in area or having less than 150 feet street frontage.  (b) No building shall be changed as to use for dwelling, commercial or industrial purposes on a lot less than minimum size. Section 5, subparagraph 6 (a) Only single family dwellings may hereafter be built or placed on any lot in the town.  No existing building may be altered, enlarged, or changed for use by more than one family without a special permit from the Board of Appeals. Such permits may be issued if the Board finds that there will be no detriment to surrounding property or the public health or safety and finds that there are adequate means of access.  No permits shall be issued for use by more than two families.  (b) Only one dwelling may be built or placed on any lot in the town."

[4] The answer of the abutters to the bill for declaratory relief asserts that at the town meeting of February 23, 1963, § 2 was amended to read: "(a) This Zoning By-law shall be enforced by the Selectmen as agents for the Town.  (b) No dwelling, and no building intended for commercial or industrial purposes, shall be erected, placed or enlarged, and no building shall be changed as to use for dwelling, industrial or commercial purposes, on any lot in the Town unless a building permit has been issued by the Board of Selectmen, or in appropriate cases, by the Board of Appeals.  (c) No permit shall be issued unless the applicant submits a plan of the lot showing the location of the proposed building and in cases of an enlargement or change as to use, the location of such existing building.  Application for a building permit shall be on such form as the Selectmen shall prescribe.  Building permits

had "parts of cars, . . . tires and grease and equipment and stuff" stored there. The testimony was that a zoning by-law was first adopted in 1935 or 1936. The record, however, does not permit a finding as to the provisions of the by-law when this use of the barn began. We do not know therefore whether there could be a basis for contending that this limited commercial use was an exempt nonconforming use. Perhaps the reasonable inference is that the provision restricting one main building to one lot dates from the inception of the by-law. In any event, the expansion by the construction of the large cement block garage would not be within the nonconforming exemption of G. L. c. 40A, § 5. *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 523–524, and cases cited.

Section 3, subparagraph 2 of the zoning by-law provides as to nonconforming uses: "The Board of Appeals may permit the extension of non-conforming building or structure or use throughout the premises provided such extension is not more detrimental or objectionable to the neighborhood and the town." We assume without deciding that this section would support a decision by the board, on proper application, for the extension of Lloyd Pugsley's nonconforming use, if the use was in fact nonconforming and not violative of the by-law when it began. See *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 412–414.

Perhaps the cement block garage building, now substantially completed, is legally usable, or modifiable and legally usable, for a use accessory to the existing main use of the lot for dwelling purposes. There is only one district in the town and the by-law imposes much less regulation than is common in such regulations. The considerations noted in this and the preceding paragraph are relevant to the relief now appropriate.

shall expire two (2) years from the date of issuance. No permit shall be issued if the proposed building or construction shall violate any of the Town By-Laws or General Laws." These provisions appear in Exhibit 14 which is the by-law as amended "February 25, 1963."

4. The order disallowing the answer in abatement in the mandamus proceeding and the order for issuance of the writ are reversed. An order dismissing the petition for writ of mandamus is to be entered in the Superior Court.

The decree dismissing the bill for declaratory relief is reversed. A decree is to enter in the Superior Court in general accordance with this opinion and, in particular, declaring (A) the general by-law, art. 6, § 5, requiring a license for a junk business is inapplicable; (B) the use of the cement block building for the conduct of an automobile repair business would violate the zoning by-law; (C) the building, if not shown on a further hearing to be adapted and intended for a permitted use, is to be removed, provided that no decree ordering removal shall be entered prior to the expiration of sixty days from the date of the rescript, and if in that period an application for a permit to the board of appeals shall be made, seeking discretionary action to validate the presence and some use of the structure, no decree for removal shall be entered until the final termination of the proceedings, including any appeal.

*So ordered.*