WALTER E. BETTENCOURT & others *vs.*
EDNA O. BETTENCOURT.

Dukes County.   March 9, 1972. — May 31, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Contract,* What constitutes, By reciprocal wills. *Frauds, Statute of.*
*Evidence,* Extrinsic affecting writing. *Equity Pleading and Prac-*
*tice,* Rehearing, Parties.

Discussion of the creation of a contract by simultaneous and recipro-
cal wills. [5–7]
If two simultaneous and reciprocal executed wills were intended to
create a contract for specifically stated inter vivos dispositions of
real estate by the survivor of the two makers of the wills, the
survivor's will would be a sufficient memorandum to satisfy the
statute of frauds in a proceeding against the survivor to enforce
such dispositions. [7–8]
In a suit in equity against the survivor of the makers of two simul-
taneous and reciprocal wills to enforce a contract allegedly created
by the wills requiring certain inter vivos dispositions of property
by the survivor, parol evidence was properly considered to ascer-
tain the circumstances attendant upon the execution of the wills
and thereby to assist in determining the makers' intent. [8–9]
In a suit in equity where the conclusion of the judge was ambiguous,
was based on meager findings, and dealt only with an indecisive
issue and not with certain important issues, the suit was remanded
for rehearing in the trial court and for specific findings on all
material issues. [9–10]
If two simultaneous and reciprocal wills created a contract requiring
certain inter vivos dispositions of property by the survivor of the
two makers of the wills, the executor of the will of the other maker
would be a proper party in a suit to enforce the contract against
the survivor. [11]

1

BILL IN EQUITY filed in the Superior Court on April 13, 1970.

A demurrer to the bill was overruled by *Cahill, J.* The suit was heard on the merits by *DeSaulnier, J.*

*Franklin N. Cunningham* for the plaintiffs.

*Robert J. Morrissey* for the defendant.

CUTTER, J.   The plaintiffs, who are all children or stepchildren of Edna O. Bettencourt,[1] by this bill seek to require her to convey to them certain parcels of real estate in Edgartown in accordance with undertakings which the plaintiffs assert Edna made or confirmed in a will executed by her substantially in the same form, and on the same day (February 14, 1967), as a will made by Anthony.  A demurrer[2] was overruled.

A Superior Court judge made a report of material facts.  He concluded that the wills of the widow and her late husband in fact "were wills" which (as to her will) Edna "could revoke . . . at her pleasure."  By final decree, the bill was dismissed.  The children appealed.  Designated evidence is reported.  See S. J. C. Rule 1:02, 351 Mass. 732–734; 353 Mass. 804.  The facts are stated (except as otherwise indicated) on the basis of the report of material facts.

Edna married Anthony in 1947.  Including their children by earlier marriages, they had five children in all (fn. 1).  Anthony and Edna made several trips to California.  On a trip in 1966 they had narrowly escaped several automobile accidents.  They planned to go to California again in 1967.  They decided to pro-

---

[1] Two plaintiffs are sons of Edna's late husband, Anthony A. Bettencourt, by his first marriage. One plaintiff is Anthony's son by Edna. The plaintiffs.assert the right to bring the bill in behalf of another child, the daughter of Anthony and Edna, and of Edna's daughter (adopted by Anthony) of an earlier marriage, if these daughters should see fit to seek to be joined as plaintiffs.

[2] This demurrer asserted (1) absence of grounds for relief in equity; (2) the statute of frauds, G. L. c. 259, § 5A, and (3) absence of an enforceable right in the children to sue on a contract to which they were not parties and with respect to which no consideration moved from them.

vide for the children by will "in case they were both killed during the trip."

A lawyer (who had done earlier work for Anthony and Edna) made a draft will for each of them and then met with them. He told them "that they could change the will at any time." The lawyer "did not inform . . . [them] that he intended to draw a trust, or an agreement." The instruments were signed simultaneously. Edna's will was placed on deposit (G. L. c. 191, § 10, as amended by St. 1960, c. 118; and §§ 11 and 12) with the register of probate.

On the next day Anthony and Edna left for California. While there they separated. Edna returned in the spring to Martha's Vineyard. She consulted a lawyer and began divorce proceedings in April, 1968. In November, 1968, Edna went to the court house, took her will there on deposit, "put several crosses through" it, and wrote "Revoked" on each page.

In December, 1968, a hearing was held on Edna's libel. "[N]o decree was ever issued."[3] Anthony died on March 27, 1970.

Edna's will contained the following language which gives rise to the present controversy: "My husband, Anthony . . . and I own as joint tenants the real estate and personal property described in the paragraphs below . . . A, B, C, D, E and F. We have agreed with one another, in consideration of identical promises of each to the other, that following the death of the first of us to die the survivor will dispose of said jointly owned property in the manner stated in said paragraphs. By this will, and by an identical will made today by my husband, each of us confirms the agreement and provides for the disposition of said property and of our respective interests therein as joint tenants and as a survivor in the manner stated in said paragraphs; and each of us agrees to execute whatever addi-

---

[3] Edna testified that "the divorce was denied" and a support order was issued.

tional deeds or other instruments may be necessary to accomplish the agreed results."

After the passage just quoted follow five paragraphs marked A to E, inclusive. Each paragraph describes a parcel of land in Edgartown and gives it to one or more of the children (in one instance subject to a life interest in the survivor of Anthony and Edna).[4] The provisions of pars. A to E, inclusive, indicate that all or most of the parcels of real estate referred to in those paragraphs were owned by Anthony and Edna as tenants by the entirety.[5]

The judge admitted, without any exception being saved (or any objection being made except on the ground of materiality), Edna's testimony about what the lawyer told Anthony and her before the will was signed. She testified that "when we were making the will up . . . [the lawyer] said that we could have this will added to or changed in any way whatsoever whenever each one of us wanted to do it — we didn't have to do it together, or anything like that. Each one could change it according to his own will." She denied that the lawyer ever told her "that the will could not be revoked" or that he ever used the word "trust" or "agreement." Also without exception (and over only

---

[4] In each of pars. B through E, inclusive, there appears a final sentence, substantially (apart from minor changes appropriate to the particular designated child or children) like the following language in par. B, viz.: "Promptly after the death of my husband, if I survive him, I will execute any deeds or other instruments necessary to convey the said property in fee to our said son and his issue by right of representation if he or any of his issue are then living." Some of the paragraphs refer also to personal property related to the real estate mentioned.

[5] Another possibly relevant provision is par. F of Edna's will, which reads: "If I survive my husband, all the real and personal property which we owned jointly, including any of the properties described in paragraphs A through E above the grantees of which shall have predeceased me, shall belong to me absolutely as survivor to do with as I see fit. I give, devise and bequeath such part of said properties as I may still own at the time of my death, and also all other real or personal property which I may then own, or to which I may be entitled, or over which I may have any power of appointment, in equal shares to our then living children, Richard, Walter, Andreanna, Anthony and Rebecca, the issue of any deceased child to take by right of representation."

general objections) she gave testimony that she "believed that . . . [she] could change the will or do as . . . [she] pleased with it at any time," and that her husband never told her or (to her knowledge) anyone else that "his understanding was any different from" hers. She further testified that the "will was made up specifically for our trip to California, with the understanding that I could change or do anything that I wanted to with it at any time if I was able to get back."[6]

The lawyer testified that he had been asked "to prepare a document which would provide that the survivor [of Anthony and Edna] would not have an uncontrolled and absolute ownership of the properties which are involved in the agreement, to do with as the survivor saw fit." Such an arrangement "they did not want . . . ." Instead, he said, they wanted "a provision . . . allocating the properties to the children . . . upon the death of the first one of them to die." The lawyer denied that he ever told Edna "that she could change this document at any time."

1. The instrument, stating that it is Edna's last will (found by the judge to be identical to that of Anthony), is (with respect to the recital of an agreement with Anthony about disposal of the Edgartown real estate) somewhat unusual in Massachusetts. See Newhall, Settlement of Estates (4th ed.) § 342, p. 397 ("There is no law or practice in Massachusetts as to either joint or mutual wills"). See also Lombard, Probate Law and Practice, §§ 1621, 1628. Compare, however, *Young* v. *Young*, 251 Mass. 218, 220–222. Elsewhere the law is by no means uniform, but there is substantial authority that mutual or reciprocal wills, particularly those of a husband and wife, may be based upon, reflect, or express a prior or simultaneous contract (not unilaterally

---

[6] There was also introduced in evidence the transcript of parts of Anthony's testimony at the hearing of the divorce libel in which he replied to a question about the conversation among the lawyer, Edna, and himself: "Was anything said . . . that she could not revoke the will?" Answer: "No, there was nothing said about it, not a word."

revocable) to dispose of property in a specified manner.[7] The mere execution of simultaneous and reciprocal wills, however, "does not, of itself, show that the parties had entered into a contract to make such wills" or other disposition. See Page, Wills (Bowe-Parker ed.) § 10.4;[8] Sparks, Contracts to Make Wills, 29–30. See also *Gary v. Perpetual Trustee Co. Ltd.* [1928] A. C. 391, 400–401; *Re Oldham*, [1924] 1 Ch. 75, 87–89. On the other hand, some cases elsewhere allow enforcement of adequately proved agreements (sometimes set out or referred to in wills) to make dispositions of particular property. See e.g. *Brewer v. Simpson*, 53 Cal. 2d 567, 587–589; *Helms v. Darmstatter*, 56 Ill. App. 2d 176, 182–187; *Estate of Wade*, 202 Kans. 380, 385–390 (will held contractual despite absence from it of language to that effect); *Wimp v. Collett*, 414 S. W. 2d 65, 70–77 (Mo.); *Geiger v. Geiger*, 185 Neb. 700, 702 (agreement in wills); *Tutunjian v. Vetzigian*, 299 N. Y. 315, 319–321 ("resulting trust" held to result from contract); *Rubenstein v. Mueller*, 19 N. Y. 2d 228, 231–234; *Godwin v. Wachovia Bank & Trust Co.* 259 N. C. 520, 529–530 (simultaneously executed wills, incorporating an invalidly executed trust agreement, held evidence of a contract); *Olive v. Biggs*, 276 N. C. 445, 464–465. Cf.

---

[7] See cases collected in Page, Wills (Bowe-Parker ed. and 1972 supp.) §§ 10.1 to 10.50; Powell, Real Property, pars. 962–963 (and 1971 supp.); Thompson, Wills (3d ed. and 1962 supp.) § 16; Tiffany, Real Property (3d ed.) § 1093 (and 1972 supp.); Sparks, Contracts to Make Wills, 190–198; annotation, 169 A. L. R. 9, 23 et seq., 53 et seq.; 57 Am. Jur., Wills, §§ 680–736; 97 C. J. S., Wills, §§ 1364–1368. See also notes 16 Baylor L. Rev. 167; 20 *id.* 422. Such arrangements may be productive of litigation, tax uncertainties, and problems of proof and interpretation. See 1 Casner, Estate Planning (3d ed. and 1970 supp.) 71–73; Sparks, A. Draftsman's View of Joint and Mutual Wills, 4 Univ. of Miami Inst. on Estate Planning, c. 70–3; note, 61 Harv. L. Rev. 675, 686; note, 39 B. U. L. Rev. 62, 64–71, 90–94.

[8] Other cases include the following: *Floerchinger v. Williams*, 260 Iowa 53, 57–58 (statutory rule); *Estate of Miller*, 186 Kans. 87, 98. Some courts, by emphasis on the need for "clear evidence" of such an alleged agreement, indicate their reluctance to find a contractual obligation. See *Oursler v. Armstrong*, 10 N. Y. 2d 385, 389–393; *Ernest v. Pezoldt*, 223 Ore. 97, 103–104; *Rhode's Estate*, 277 Pa. 450, 453–454; *Pederson v. First Natl. Bank*, 31 Wis. 2d 648, 652–654 (but contract found to exist).

*Foley* v. *Elliot Community Hosp.* 98 N. H. 186, 190.[9]

The uncertainties concerning the effect, interpretation, and consequences of joint, mutual, or reciprocal wills are strong reason for strictly construing such instruments, in effect, as presumptively not intended to make or reflect a contract for a particular disposition of property. In the absence of explicit language compelling such a construction, simultaneously made wills with reciprocal provisions, we think, should not be interpreted as expressing a contractual obligation.[10] Even if a contractual obligation in fact is intended in such circumstances as here appear, we are of opinion that the desired result is likely to be accomplished more clearly (and with more complete understanding by the parties) by the use of a carefully expressed trust instrument rather than by the use of wills.

The asserted agreement (at least apart from par. F, fn. 5, *supra*) is not one to make a devise at Edna's death or to make a will (see G. L. c. 259, § 5, as appearing in St. 1965, c. 560, § 1, and § 5A, inserted by St. 1965, c. 560, § 2),[11] but is one to make the inter vivos dispositions which each will stipulates. See c. 259, § 1.

---

[9] See also *Bonczkowski* v. *Kucharski*, 13 Ill. 2d 443, 451–455; *Tontz* v. *Heath*, 20 Ill. 2d 286, 291–292; *Rich* v. *Mottek*, 11 N. Y. 2d 90, 93–94; *Williams* v. *Chastain*, 221 Ore. 69, 74–80 (contract limited to jointly held property); *Herr Estate*, 400 Pa. 90, 94–96; *Estate of Hoeppner*, 32 Wis. 2d 339, 344–348. Compare *Estate of Ramthun*, 249 Iowa 790, 799–802.

[10] One authority has said of reciprocal wills, "Whatever their [the clients'] desires, it is up to the attorney to draft the appropriate documents in such a way as to leave no uncertainty as to what his clients' intentions were. . . . The client cannot be expected to understand the confusion created by the execution of joint and mutual wills. But the attorney should understand and . . . surround the will with sufficient evidence to facilitate proof of the facts involved." See Sparks, A Draftsman's View of Joint and Mutual Wills, 4 Univ. of Miami Inst. on Estate Planning, par. 70:309, p. 3–16. He should also be sure that his clients understand that (if a binding contract for a particular property disposition really is intended and effectively expressed) they will probably be precluded from effecting any different disposition without the assent of both parties, or after the death of one party, if the contract can be enforced.

[11] See *West* v. *Day Trust Co.* 328 Mass. 381, 384–385; *Foman* v. *Davis*, 316 F. 2d 254, 255–257 (1st Cir.), both decided before the 1965 act amending § 5 and inserting § 5A. See also Newhall, Settlement of Estates (4th ed. and 1971 supp.) § 334.

The disposition in Edna's will, if it determined that a contract was intended, in terms is specific enough to constitute a memorandum. It is signed by Edna, the party to be charged. It states the terms of the "agreement" between her and Anthony, and indicates the consideration. It proposes inter vivos transfers of specifically described parcels. The statute of frauds thus can be satisfied by the writing contained in the will. See *Herr Estate*, 400 Pa. 90, 96; Corbin, Contracts, § 509. See also *Tzitzon Realty Co. Inc.* v. *Mustonen*, 352 Mass. 648, 651–654; *Potter* v. *Bland*, 136 Cal. App. 2d 125, 129–132.

We recognize that the references in Edna's will to the existence of an agreement are somewhat unusual in Massachusetts, and that there exists uncertainty whether (a) they reflect a binding contract or trust rather than (b) an informal intra-family understanding subject to alteration at the will of the parties. These doubts arise primarily because of parol testimony.[12]

The cases elsewhere (see fn. 9 and related text of this opinion) have employed, with considerable freedom, parol evidence to resolve ambiguities implicit in similar language in or affecting wills. The references to a contract, however, in the simultaneous wills before us may be more definite than those upheld as reflecting a contract in most of the cases in other jurisdictions already cited. Not only is the language adequate to meet the requirements of the statute of frauds, but it purports definitely to describe a specific agreement. In no respect is the contract described a strange one for a wife (married twice and with children by each marriage) to make with a husband with a similar family background, for the appropriate treatment of all of the children. Neither the instruments nor the parol evidence suggest

---

[12] This testimony (admitted without exception) includes (1) the conflicting testimony of the attorney and of Edna concerning what advice the former gave to her and Anthony; (2) Edna's own testimony concerning her understanding of the effect of her will; and (3) the fact that the wills were executed in contemplation of a particular trip. Cf. *Will of Lamerdin*, 250 App. Div. (N. Y.) 133, 134–135.

that any contract between the parties was based on an express or implied condition that the agreement be dependent upon the continuance of an amicable marriage relationship.

The agreement seems intrinsically a fair one. It was drawn by an attorney who seems to have tried to state clearly an integrated and binding contract. Even parol evidence, admitted without exception, cannot be employed to vary an integrated written agreement. See *Gethins* v. *Breeyear*, 252 Mass. 326, 327–328; *Kerwin* v. *Donaghy*, 317 Mass. 559, 568. See also *Frick Co.* v. *New England Insulation Co.* 347 Mass. 461, 467; *Pagliarulo* v. *National Shawmut Bank*, 353 Mass. 449, 450. In the present case, however, the parol evidence was properly considered at least to disclose the circumstances attendant upon the execution of the wills and, to that extent, to assist in determining what the parties intended.

The judge's decision was based on meager subsidiary findings and was at best ambiguous. He concluded only that the instruments "in so far as it is . . . [a] question of fact . . . [from Edna's and the attorney's testimony] *were wills*, and *as such* . . . Edna . . . could revoke . . . [her] will at her pleasure" (emphasis supplied). Although he made subsidiary findings, which were consistent with parts of Edna's parol testimony, he did not address himself directly to the issue whether the parties intended to make, or had made, a contract. He also did not deal in explicit terms with whether the instruments stated or recorded an integrated agreement, which would preclude variation by parol evidence. He seems to have reached his conclusion solely on the basis that the instruments were wills and hence revocable, an issue not decisive of the case. Much more complete subsidiary findings and a more detailed statement of conclusions would have been appropriate.

Although the evidence is before us, the court concludes that it should not attempt to resolve the ambiguities in the judge's decision. We have had no opportunity to hear

and appraise the witnesses. Accordingly, we remand the case for a new trial (in the light of this opinion) in which there should be specific findings on all appropriate issues.[13]

2. The remaining question is whether these plaintiffs can maintain the present suit. This is in part a proceeding for declaratory relief under G. L. c. 231A. That chapter (see § 9) is to be construed broadly. See *Sun Oil Co.* v. *Director of the Div. on the Necessaries of Life,* 340 Mass. 235, 239; *Norwell* v. *Hartford Acc. & Ind. Co.* 358 Mass. 575, 578. See also *Magoun* v. *Liberty Mut. Ins. Co.* 346 Mass. 677, 684, fn. 6. Even if a plaintiff is not entitled to the particular relief sought, he is entitled to a binding declaration of rights under an agreement. See *Hannan* v. *Enterprise Publishing Co.* 341 Mass. 363, 365; *Provident Coöp. Bank* v. *James Talcott, Inc.* 358 Mass. 180, 193.

The plaintiffs are all in an intimate family relationship to Edna. They may well be within the principle allowing enforcement of contracts by beneficiaries, who have furnished no consideration and who are not parties to the contract, but who are closely related by blood or family connection to a promisor or promisee. See *Green* v. *Green,* 298 Mass. 19, 20–23, and cases cited; Corbin, Contracts (and 1971 supp.) §§ 826, 1154; Williston, Contracts (3d ed.) §§ 357–360. Cf. *Estate of Porter* v. *Commissioner of Int. Rev.* 442 F. 2d 915, 918–919 (1st Cir.). Enforcement of such a beneficiary's interest[14]

---

[13] Such issues may include (a) whether the parties intended to make a binding contract; (b) the duration of any such contract (e.g. until changed by mutual assent, or for a reasonable time, or for the period of the then proposed trip); (c) the terms of any such contract, and the extent to which the two wills constituted an integrated expression of such a contract; and (d) whether the parties entered into any such contract because of some mutual mistake. See *DeVincent Ford Sales, Inc.* v. *First Mass. Corp.* 336 Mass. 448, 451–453; *Piea Realty Co. Inc.* v. *Papuzynski,* 342 Mass. 240, 248. See also *Provident Coöp. Bank* v. *James Talcott, Inc.* 358 Mass. 180, 189–190. Cf. *Scirpo* v. *McMillan,* 355 Mass. 657, 660.

[14] The soundness of any general rule preventing enforcement of such a third party beneficiary's rights has been doubted. See the text authorities just cited; and *Boston & Maine R.R.* v. *Construction Mach.*

may perhaps be sustained on the theory that a trust has been created in substance (see *Henry F. Mitchell Co.* v. *Fitzgerald,* 353 Mass. 318, 320–322) if not in form. See *Rugo* v. *Rugo,* 325 Mass. 612, 616. Cf. *Young* v. *Young,* 251 Mass. 218, 221.

We need not resolve these procedural problems in the present case. One plaintiff is the executor of Anthony, a party to the contract reflected in Edna's will. He may enforce Edna's obligation under the contract, as Anthony's personal representative. We think this plaintiff now should be allowed to amend the bill, to become also a party plaintiff in his capacity as executor. *Margolis* v. *Margolis,* 338 Mass. 416, 418. See also *Eaton* v. *Eaton,* 233 Mass. 351, 365.

3. The interlocutory decree overruling the demurrer is affirmed. The final decree is reversed. The case is remanded to the Superior Court for further preliminary proceedings and a new trial in a manner consistent with this opinion.

*So ordered.*

---

*Corp.* 346 Mass. 513, 521, fn. 5. See also Restatement 2d: Contracts (Tent. draft no. 3, April 18, 1967) § 138.