BUILDING INSPECTOR OF FALMOUTH *vs.* NICK HADDAD
& another, trustees,
(and a companion case[1]).

Barnstable.    January 17, 1975. — March 10, 1975.

Present: HALE, C.J., ROSE, & KEVILLE, JJ.

*Zoning,* Enforcement.    *Equity Pleading and Practice,* Decree.

A decree enjoining further construction on four lots of land and re-
quiring the removal of structures already built thereon as a result

———————

[2] The docket discloses an entry to the effect that this request was
waived in open court on September 13, 1973.

[1] Nick Haddad & another, trustees, *vs.* Building Inspector of Fal-
mouth & another.

of the owner's failure to obtain proper permits and deliberate viola-
tions of applicable provisions of the zoning by-law was overbroad as
to three of the lots where there was nothing in the judge's findings
to indicate that the intended use of the structures on those lots was
not permissible under the zoning by-law or that a modification of
either the structure or the lot lines on one of the lots could not be
made to bring it into conformity with the requirements of the zon-
ing by-law.  [120-121]

A decree ordering removal of a structure from a lot of land would not
be disturbed where there was evidence that the owner acted in bad
faith in building a structure intended for use as an inn, after re-
peated warnings that the building permit issued for the lot was for
a single-family dwelling only and that written approval of the board
of appeals was necessary before an inn could be constructed, and
where it appeared that the structure could neither be used nor modi-
fied for use as a single-family dwelling in conformity with the ap-
plicable by-law provisions.  [121-122]

Two BILLS IN EQUITY filed in the Superior Court on June
5, 1972, and June 9, 1972, respectively.

The suits were heard by *Leen, J.*

*James D. St. Clair* for the defendant Nick Haddad,
trustee.

*Edward W. Farrell,* Town Counsel, for the Building In-
spector of Falmouth.

*John W. Hanlon,* intervener, pro se.

*Brian E. McDermott & Edward W. Kirk* for Davisville
Association, amicus curiae, submitted a brief.

HALE, C. J.   The building inspector of the town of Fal-
mouth (building inspector) brought a bill in equity which
sought to enjoin the trustees of the Foster Real Estate
Trust (trustees) from further construction on four lots of
land in the town of Falmouth (town) and to require the
removal of structures already built thereon and the restora-
tion of the lots to their condition prior to the commence-
ment of construction. The trustees in turn brought a bill
for declaratory relief (naming the building inspector and
the town as defendants) which in substance sought a deter-
mination of the right of the trustees to build on the four
lots.

The cases were tried together before a Superior Court
judge, who entered findings, rulings and orders for decrees.
He later adopted the findings as his report of material facts.

The trustees appealed from a final decree enjoining further construction on the four lots and ordering the removal of the structures erected thereon, and from a final decree dismissing the bill for declaratory relief.

We summarize the facts found by the trial judge and certain additional facts not so found but which we glean from the evidence.[2] The four lots originally comprised a single parcel which the trustees acquired from a corporation on November 5, 1970. The parcel consisted of 82,912 square feet of land upon which were a dwelling and a second building which had been converted from a garage into a two-room cottage. The parcel was and is in an area zoned as a "single residence district."

For a period of about twenty years prior to its acquisition by the trustees, the dwelling had been used by the occupants as a boarding or lodging house during summer seasons. There were about ten bedrooms in the main house. The prior owner operated the dwelling under an innholder's license. On March 13, 1971, the main building was totally destroyed by fire. The cottage remained as the only structure on the land. On June 1, 1971, an innholder's license was issued to one of the trustees.

On October 19, 1971, the trustees applied for and obtained a permit to build a single family, two-story dwelling, seventy-five by thirty-four feet in size. No building or plot plans were submitted with the application.

On December 7, 1971, a subdivision plan, under which the parcel would be divided into four lots (numbered one through four, inclusive) was submitted to the planning board, which endorsed thereon "approval under the Subdivision Control Law not required." A sketch of lot 4 was then appended to the filed application upon which the building permit had already been issued. On January 10, 1972, in response to an inquiry by one of the trustees, the building inspector informed the trustees that an inn could not be constructed on the land without the approval of the

---

[2] For an understanding of the areas involved, reference may be made to figure 1 (the plot plan).

board of appeals[3] and that no building permit could be issued authorizing the building of an inn.

Subsequently building permits were issued authorizing construction of one-family dwellings on lots 1 and 3, and sewer permits were issued for lots 1, 2, and 3. No application for a building permit was ever made for lot 2, and no building permit was issued.

Foundations were poured on each of the four lots during March, 1972. On or about March 27, 1972, construction began on the building above the foundation on lot 4.[4] On April 18, 1972, the building inspector issued an order directing that all work on all four lots stop immediately. At the time that the work was stopped the building on lot 4 was fully framed and boarded in, and the roof was covered with plywood. Following a conference with town officials, the trustees were allowed to "close in" the building to protect it from the weather. The trustees "closed in" the building by completing two decks or porches extending all around the building at each floor level, extending the roof to cover the upper deck, installing windows and twenty sliding glass doors, shingling the roof and side walls, and performing other exterior finish work.

The trustees had been issued an innholder's license, dated April 3, 1972, which was endorsed: "This license is granted with the stipulation that the structure and location shall be substantially the same, as under the previous license. Any substantial deviations from these requirements shall be grounds for revocation of this license." The structure erected on lot 4 bore no resemblance to the building which had previously been licensed.

On May 3, 1972, the board of health revoked the sewer permits for lots 1 and 2 on the ground that the plans for

[3] The town's zoning by-law allows "[b]oarding and lodging houses, motels, inns, apartment hotels and apartment motels" in a single residence district subject to the issuance of a special permit by the board of appeals.

[4] On March 11, 1972, one of the trustees had stated to various members of a neighborhood association that a single family dwelling was to be built on lot 4, and that there was no intention to rent rooms.

the disposal system failed to comply with the requirements of Article XI of the State Sanitary Code. The revocation was subject, however, to the permits being reinstated upon the filing of plans which would comply.[5]

The foundation on lot 1 does not conform to the ten-foot sideline setback requirement of the zoning by-law in that a corner of the building is only nine feet from the line dividing lots 1 and 2. As stated above, no building permit was ever issued for lot 2.

The three building permits were revoked on May 15, 1972,[6] and the board of health revoked the two outstanding sewer permits two days later.

The judge ruled that the revocation of the permits for lot 1 was valid for the reasons that the structure on the lot was in violation of the zoning by-law (no variance from the requirements of the zoning by-law as to sideline setbacks having been obtained), and that the sewage disposal system plan failed to meet the requirements of the State Sanitary Code. His ruling that the construction on lot 3 was illegal was based wholly on the May 8, 1972, decision of the board of appeals (see fn. 5).

 · The judge found that the structure built on lot 4 was not a single family residence but was "an inn or similar commercial establishment." The evidence abundantly sup-

---

[5] The judge found that on May 8, 1972, the board of appeals declared the building permit covering lot 3 to be invalid "as there was already a structure on this lot used for dwelling purposes (the converted garage) and that the zoning by-laws do not permit more than one building for dwelling purposes on one lot" and that no appeal had been taken from this decision. Plans in evidence show the converted garage to be on lot 3 (see figure 1). However, the decision of the board of appeals does not refer to the permit for lot 3. It refers rather to the original permit (issued on October 19, 1971, at which time there was no plan of subdivision into four lots) by number — 03810 (actually the application upon which the permit was issued was numbered 03810; the permit bore the number 03809) — holding that permit to be valid but then stating that "any other building permits and buildings on the property in question are invalid." In view of the results we reach, we need not express an opinion on the effect, if any, of that decision.

[6] A revised disposal plan subsequently submitted for lot 1 was found to be in compliance by the health agent, although further action on the permit application was withheld pending this appeal.

ports this finding.[7] He further found that this structure, which provided for twenty living units, was not the equivalent of a single family residence of no more than ten such units as existed previously, and ruled that a special permit from the board of appeals was required but never obtained.

The trustees do not argue that the findings and rulings by the judge as to each of the four lots were erroneous. Rather, they argue that the final decree entered in the equity case was erroneous in that it was overbroad and should be vacated or modified so that the trustees may be permitted to secure permits from the appropriate agencies of the town and thus continue with the construction of such buildings as may be in conformity with the zoning by-law.

It is argued in support of the building inspector's position[8] that while an injunction ordering the removal of all construction is a drastic one and ought to be applied with caution, such a remedy was proper in the instant case because the trustees deliberately proceeded with construction which they knew to be in violation of the zoning by-law. *Stewart* v. *Finkelstone*, 206 Mass. 28, 38 (1910),[9] is cited in support of that position. We are aware of the implications of that decision, particularly of that part of it quoted in footnote 9. On the other side of the balance is

---

[7] It is clear from the trial transcript that the case was tried on the footing that the intended use of the building was as an inn.

[8] Briefs have also been filed by the Davisville Association, as amicus curiae, and by a resident of the area, who was permitted to intervene in both cases.

[9] "It is strongly urged that a mandatory injunction ought not to issue, for the reason that it would operate oppressively and inequitably, and impose on the defendant a loss disproportionate to the good it can accomplish ... This remedy is a drastic one, and ought to be applied with caution, but in cases proper for its exercise, it ought not to be withheld merely for the reason that it will cause pecuniary loss. It has been found that the defendant with full knowledge of the restrictions 'deliberately attempted' to override them, and thus to deprive the district of the character given it by the restrictions. He took his chances as to the effect of his conduct with eyes open to the results which might ensue."

what we said in *Sterling* v. *Poulin,* 2 Mass. App. Ct. 562, 565 (1974).[10]

While deliberate violation of zoning restrictions is, of course, not to be rewarded, to require the removal of structures without regard to their possible (or potentially) legal use in a manner permitted by the applicable ordinances or by-laws would mandate the unnecessary destruction of property. There is nothing in the findings to indicate that the intended use of the structures erected on lots 1, 2, and 3 is not permissible under the zoning by-law, which allows the construction of single-family dwellings. Nor is there any indication that the one-foot encroachment of the corner of the foundation on lot 1 could not be conformed to the requirements of the zoning by-law by altering either the lot lines or the structure itself. On the other hand, we are unable to conclude that the structure erected on lot 4 could be used in conformity with the applicable by-law as a single-family dwelling, or that it is modifiable to such use. It is clear from the evidence that the trustees intended to use that structure as an inn. They were repeatedly warned and knew that the building permit issued for lot 4 was for a single-family dwelling only and that written approval of the board of appeals would be necessary before an inn could be constructed. The trustees urge that our decision in the *Sterling* case leaves open the possibility of a stay of the court's order to demolish the structure to afford them an opportunity to apply for a special permit for use of the property as an inn. We consider the *Sterling* case to be distinguishable on its facts. In that case the defendant had obtained a permit to build a "pole barn" and had erected the structure in conformity with the permit, apparently in good faith reliance on the permit. That situation is to be contrasted with the bad faith of the trustees which was fully demonstrated by the evidence and is implicit in the

---

[10] "The true inquiry in each case is whether the building or structure is legally usable (or modifiable and legally usable) and is intended to be used for a main or accessory use which is permitted by the applicable ordinance or by-law. *Stow* v. *Pugsley,* 349 Mass. 329, 334-335 (1965)."

judge's findings. In such circumstances, we see no reason to disturb the order for the demolition of the building on lot 4.

We conclude that that part of the decree in the equity case enjoining all further construction was overbroad, acting as it did to bar even such construction by the trustees as would be in conformity with the zoning by-law. We also conclude that any order directing the removal of the structures erected on lots 1 and 3 should provide for a reasonable length of time during which the trustees may be permitted to file new sewage plans for the installation of sewage disposal systems and make such other modifications and adjustments as are necessary to allow the building and sewer permits to be reinstated or upon which to base applications for new permits. As to lot 2, the trustees should be permitted a reasonable length of time to apply for a building permit and to seek reinstatement of the sewer permit or to apply for a new one. As to lot 4, that part of the decree ordering the removal of the present structure (the inn) is affirmed. We vacate the decree in the equity case and remand the case for the entry of a decree in conformity with this opinion.

The bill for declaratory relief should not have been dismissed. *Bettencourt* v. *Bettencourt,* 362 Mass. 1, 10 (1972). *Kanall* v. *318 Lounge, Inc.* 1 Mass. App. Ct. 5, 9 (1972). The final decree dismissing the bill is reversed, and the case is remanded for the entry of a decree in conformity with this opinion.

*So ordered.*