BUILDING INSPECTOR OF FALMOUTH *vs.* NICK HADDAD
& another,[1] trustees
(and a companion case[2]).

Barnstable.    November 4, 1975. — January 6, 1976.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Zoning,* Enforcement.    *Equity Pleading and Practice,* Decree.

Where a town's zoning by-law permitted a lot to be used as of right
for the erection of a single family residence and by special permit
for the erection of an inn or motel, and the owner of the lot,
without seeking or obtaining a special permit, obtained a building
permit for the erection of a single family residence, which permit
was thereafter revoked because the partially completed structure
resembled an inn or motel, the building should not have been
ordered removed without the owner being afforded a reasonable
opportunity to attempt to obtain any permit necessary to adapt
and devote some part or all of the structure to a use or uses per-
mitted under the zoning by-law as of right or by a special permit,
and to perform the work or changes authorized by any such per-
mit.  [454-461]

Two BILLS IN EQUITY filed in the Superior Court on
June 5, 1972, and June 9, 1972, respectively.

The suits were heard by *Leen,* J.

After review by the Appeals Court, the Supreme Judi-
cial Court granted leave to obtain further appellate
review.

---

[1] The defendants are Nick Haddad and Kenneth G. Flynn as trustees
of the Foster Realty Trust, and are referred to as "trustees" in this
opinion.

[2] The companion case was brought by Nick Haddad and Kenneth
G. Flynn (trustees) against the building inspector.

*James D. St. Clair (F. Anthony Mooney* with him) for Nick Haddad & another, trustees.

*Edward W. Farrell,* Town Counsel, for the Building Inspector of Falmouth.

*John W. Hanlon,* intervener, pro se.

*Brian E. McDermott & Edward W. Kirk,* for Davisville Association, amicus curiae, submitted a brief.

QUIRICO, J.   These are two bills in equity relating to a controversy arising principally out of the provisions of the zoning by-law of the town of Falmouth.   The first bill was entered on June 5, 1972, by the town's building inspector against the trustees, as owners of four lots (herein identified only as lots 1, 2, 3 and 4) located in Falmouth, seeking a decree enjoining them from any further construction on the lots and ordering them to remove the buildings then being constructed thereon.   The second bill was entered on June 9, 1972, by the trustees against the building inspector seeking declaratory relief in the same controversy.   John W. Hanlon intervened as a plaintiff in the first case and as a defendant in the second case.

After hearing the cases on their merits, a judge of the Superior Court entered a final decree in the first case granting the relief sought by the building inspector, and one in the second case dismissing the bill for declaratory relief.   The trustees appealed from both decrees to the Appeals Court.   In the first case the Appeals Court modified the final decree as it related to the construction on lots 1, 2 and 3, and it affirmed it as to lot 4.   In the second case it reversed the decree dismissing the bill for declaratory relief and it ordered the entry of a new decree in conformity with its action in the first case. *Building Inspector of Falmouth* v. *Haddad,* 3 Mass. App. Ct. 114, 122 (1975).[a]

This court thereafter granted the trustees' application for "further appellate review of so much of the decision

[a] 324 N.E. 2d 386, 391 (1975).

of the Appeals Court as orders the entry of new Final Decrees requiring the Appellant [trustees] to remove a partially constructed inn from one of the four lots (lot 4) and to restore that lot to its condition prior to the commencement of any construction thereon." G. L. c. 211A, § 11, inserted by St. 1972, c. 740, § 1. The scope of this court's appellate review of this case is thus narrowly limited by the express language of the trustees' application. There is no issue now before us with reference to any buildings or parts thereof on lots 1, 2 and 3; and as to lot 4 the only question is whether the portion of the final decree ordering the removal of the partially completed building thereon was error. We hold that it was, for the reasons discussed below.

Lot 4 is located in a "single residence" district as established under the town zoning by-law. Section 4 of the by-law specifies the uses permitted in such a district, and the language thereof pertinent to this case is the following: "In single residence districts . . . no new building or structure . . . shall be designed, arranged and/or constructed, and no land, buildings, structures, or parts thereof shall be used, except for one or more of the following purposes: 1. One-family detached houses. 2. The taking of boarders or the leasing of rooms by a family resident on the premises. 3. Boarding and lodging houses, hotels, motels, inns, apartment hotels and apartment motels, all subject to the provisions of Sections 15B, 16 and 21 [relating, respectively, to minimum space requirements for hotels, inns, motels and apartments hotels and motels in various districts, yard requirements, and special permit requirements]."

We summarize the facts relevant to the narrow issue before us. On November 5, 1970, the trustees purchased a tract of land in Falmouth on which was located a large single family residence. Lot 4 is a part of that tract of land. For many years the former owner held an innholders' license for the property and he took in guests

during the summer season. The residence was totally destroyed by fire on March 13, 1971. On June 1, 1971, the defendant trustee Flynn obtained an innholders' license for that address under the name of "Capt's House, Kenneth Flynn." On April 3, 1972, a similar license was obtained for that address under the name of the Foster Realty Trust, the premises being described as the "Captain's House Inn."

On October 19, 1971, the trustees applied for and obtained a permit to build a one-family, two-story dwelling, seventy-five feet by thirty-four feet in size, on lot 4. On the same date they applied for and obtained a permit to construct an individual sewage disposal system on the lot. On January 10, 1972, the building inspector wrote to the trustee Flynn informing him that his application for a building permit to construct an "Inn" on his property could not be granted by the inspector because (a) the property was located in a single family residence district, and (b) only the board of appeals could grant a permit for an inn in such a district, citing §§ 4, 15B, 16 and 21 of the zoning by-law. The trustees have never requested or obtained a special permit from the board of appeals under § 21 of the by-law to entitle them to build an inn on lot 4.

In March, 1972, the trustees caused concrete walls for the cellar of a building, seventy-five feet by thirty-five feet in size, to be constructed on lot 4. On March 29, 1972, they entered into a written agreement with a building contractor who agreed to furnish the labor necessary to erect the frame of a two-story building on the foundation. The work was to include the construction of the floors, exterior walls, interior partitions, roof, a deck eight feet wide extending around the entire exterior of the building at each of the stories, and four outside stairways between the two decks. On each floor of the building there were to be ten identical units, each consisting of a bedroom and a bathroom. Access to each unit was to be by a door on the deck. The contractor constructed a

wooden building substantially in accordance with the terms of the contract.[3]

Construction of the building on lot 4 apparently started almost immediately after the trustees signed the agreement therefor on March 29, 1972. On April 10, 1972, the town counsel for the town of Falmouth sent to the trustee Flynn a letter, which Flynn received, concerning lot 4, and which stated in part: "I understand that a building permit has been issued for a single family dwelling on that location. Mr. Jennings [the building inspector] is of the opinion that the building is designed not as a single family residence but either as a motel or multiple family dwelling. At some point you are going to have to get an occupancy permit. It is the purpose of this letter to inform you that the building may be used only as a single family dwelling."

By April 17, 1972, the framework of the new building on lot 4 had been virtually completed. It was then obvious that the building was not designed, arranged or being constructed for use as a one family house, but was actually designed and being constructed for use as an inn. On April 18, 1972, the building inspector sent the trustees a written order "to cease and desist all construction and operation on all permits for buildings issued in 1971-1972, on [several] lots" including lot 4. At that time the walls of both stories of the building had been erected, with openings in the locations of proposed doors and windows, and the first-story deck was partially completed. There was no roof on the building. A conference between the trustees and town officials resulted in an arrangement permitting the trustees to "close in" the building to protect it from the weather and other damage

---

[3] The trustees authorized the contractor to make several changes which do not affect our decision in this case. One change involved the omission of partitions necessary to form the bathroom for one unit on the first floor, a second involved the erection of partitions for some hallways, and a third involved the elimination of the decks on one end of the building.

it might suffer if it remained open. Thereafter the contractor continued work and by May 31, 1972, he had completed the roof and decks on both stories, inserted all exterior doors and windows, and applied wood shingles to the exterior walls.

On May 15, 1972, and again on May 30, 1972, the building inspector wrote to the trustees stating that he was confirming his "verbal order" revoking three building permits including one for lot 4. Each letter concluded with the statements that "the verbal order is in full force and effect, and that your only relief is to apply to the Board of Appeals or court action." General Laws c. 40A, § 13, has at all times material to this case provided that "[a]n appeal to the board of appeals . . . may be taken . . . by any person aggrieved by any order or decision of the inspector of buildings . . . in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder." The town's zoning by-law provided in § 26 thereof that "[a]ny person aggrieved by a decision of the Building Inspector may appeal under the provisions of Chapter 40A of the General Laws." The record discloses no such appeal by the trustees from the revocation of their building permit for lot 4.

On the basis of subsidiary findings which are summarized above, the judge concluded generally "that the new structure [on lot 4] is not a single-family residence, but rather an inn or similar commercial establishment, . . . that no permit for such a structure was ever sought or received from the Board of Appeals, and that this is required by the current zoning by-law." He ruled that "[i]nsofar as the construction on Lot 4 is concerned . . . this was illegal and that the action of the [building inspector] in revoking the building permit was valid."

The judge entered a final decree which, as to lot 4, ordered that the structure erected thereon by the trustees be removed within 120 days from the entry of the decree. Before entering the decree the judge made no findings on the question whether that structure, or any part thereof,

was usable or was modifiable and usable for a one family house or for any of the other purposes permitted as of right in a "single residence" district under the town's zoning by-law.

In upholding the part of the decree ordering the removal of the structure from lot 4, the Appeals Court in *Building Inspector of Falmouth* v. *Haddad,* 3 Mass. App. Ct. 114 (1975),[b] referred (at 121-122[c]) to "the bad faith of the trustees which was fully demonstrated by the evidence and is implicit in the judge's findings." The opinion seemed to rest, to some extent, on the statement (at 121[d]) that "we are unable to conclude that the structure erected on lot 4 could be used in conformity with the applicable by-law as a single-family dwelling, or that it is modifiable to such use."

The present situation with reference to lot 4 may be summarized as follows. The zoning by-law permits the lot to be used as of right for the erection of a single family residence thereon. The trustees obtained a permit to build such a residence thereon, the building to be seventy-five by thirty-four feet in size and two stories in height.[4] They have erected a building of that size and height on the lot, but its interior design, layout and construction are not that of a single family residence. The interior more nearly resembles a twenty unit motel for the sole reason that the trustees obviously intended from the start to use the building for such a purpose and not for a single family residence. The building inspector has revoked their building permit and the court has ordered

---

[b] 324 N.E. 2d 386 (1975).

[c] 324 N.E 2d at 391.

[d] 324 N.E. 2d at 391.

[4] The building as actually constructed was seventy-five by thirty-five feet in size, but no issue has been raised about this slight variation from the size stated in the building permit.

them to remove the substantially completed structure from the lot.

The predicament in which the trustees find themselves is of their own making. They knew from the beginning the limited nature of the building permit issued to them. They knew that they could not erect an inn or motel-type building on the lot without first obtaining a special permit therefor from the board of appeals. It is unquestioned that in the present situation the trustees may be enjoined from using the building for any purpose other than a single family residence.

The important question facing us is whether the trustees may be ordered to remove their incomplete but substantial structure without being afforded a reasonable opportunity to attempt to obtain any permit necessary to adapt and devote some part or all of the structure to a use or uses permitted under the zoning by-law as of right or under a special permit, and to perform the work or changes authorized by any such permit. We hold that they must be given such an opportunity before being compelled to demolish the present structure.

We are mindful of the Appeal Court's statement that it was "unable to conclude that the structure erected on lot 4 could be used in conformity with the applicable by-law as a single-family dwelling, or that it is modifiable to such use." However, we believe that whether the present structure is so modifiable is a question of fact which should be heard and decided by the trial court in the first instance. It does not appear that the judge of the Superior Court addressed that issue in his findings and rulings.

It is our opinion that there should be further proceedings in the Superior Court as follows. The court is to hold such further hearings as it may deem necessary to enable it to determine whether the whole or any part of the present structure is capable of being modified and completed for any of the uses permitted on lot 4 under the zoning by-law. If the court determines that it is, it

shall allow the trustees such time as may be reasonably necessary in which to apply for and obtain such building permits, special permits and other official authorizations required for such use or uses and in which to modify and complete the structure in accordance with any permit or authorization thus obtained. The court shall from time to time issue such interlocutory orders as it may deem necessary to compel and require the trustees to proceed without unreasonable delay in the prosecution of applications for any required permits or authorizations and in the performance of any construction or other work pursuant thereto. If the trustees shall fail, neglect or refuse to make or prosecute applications for permits or authorizations for the completion, or modification and completion of the structure for a use permitted by the zoning by-law, or to undertake and complete any construction or other work for the completion of such structure pursuant to such permits or authorizations, or to comply with any lawful order of the court, the court may, after hearing, order the removal of the structure from the lot.

Our disposition of this case follows the precedents established in *Harrison* v. *Building Inspector of Braintree,* 350 Mass. 559, 563 (1966), and *Stow* v. *Pugsley,* 349 Mass. 329, 335 (1965). It is also in accord with the decision in *Sterling* v. *Poulin,* 2 Mass. App. Ct. 562, 564-565 (1974), where the court, citing the *Stow* case, said (at 565): "The true inquiry in each case is whether the building or structure is legally usable (or modifiable and legally usable) and is intended to be used for a main or accessory use which is permitted by the applicable ordinance or by-law." See *Kelloway* v. *Board of Appeal of Melrose,* 361 Mass. 249, 257-258 (1972). "There is here involved no property interest requiring application of a rule like the strict rule concerning specific relief against trespasses discussed in *Geragosian* v. *Union Realty Co.* 289 Mass. 104, 109-110 [1935]," or in *Peters* v. *Archambault,* 361 Mass. 91, 92-93 (1972). *Marblehead* v. *Deery,* 356 Mass. 532, 538 (1969).

In the first case, brought by the building inspector against the trustees, the final decree entered in the Superior Court is reversed. The part of the final decree relating to lots 1, 2, and 3 is to be modified in conformity with the opinion of the Appeals Court in *Building Inspector of Falmouth* v. *Haddad,* 3 Mass. App. Ct. 114, 122 (1975).[e] With respect to the part of the final decree entered in the Superior Court which relates to lot 4, the case is to stand for further proceedings in that court in accordance with this opinion.

In the second case, which was brought by the trustees against the building inspector for declaratory relief, the decree of the Superior Court dismissing the bill without declaring the rights of the parties is reversed. "Even if a plaintiff is not entitled to the particular relief sought, he is entitled to a binding declaration of rights" in a case coming within the scope of G. L. c. 231A. *Bettencourt* v. *Bettencourt,* 362 Mass. 1, 10 (1972). *Provident Co-operative Bank* v. *James Talcott, Inc.,* 358 Mass. 180, 193 (1970). *Hannan* v. *Enterprise Publishing Co.,* 341 Mass. 363, 365 (1960). A new judgment is to be entered in the Superior Court in conformity with this opinion.

*So ordered.*