Town of Wayland *vs.* Martin J. Lee & another.

Middlesex.　January 3, 1950. — April 12, 1950.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Counihan, JJ.

*Zoning.　Res Judicata.　Abandonment.*

In a suit in equity by a town against an owner of land wherein the plaintiff sought to enjoin the defendant from removing sod, loam, sand and gravel from the land for sale in alleged violation of the plaintiff's zoning by-law and the defendant claimed a nonconforming use for such purposes existing at the time of the adoption of the by-law, the issue, whether such nonconforming use had been abandoned, was not concluded against the defendant by a decision of the zoning board of appeals denying an application by the defendant for a special permit to operate a commercial sand and gravel pit on his land, where, although the board's decision contained a finding that such nonconforming use had been abandoned and there was no appeal from the decision to the Superior Court under G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, it appeared from the scope of the defendant's application for the special permit and of the board's duty with respect thereto under the by-law that the board's finding as to abandonment was not essential to its decision.

The facts, that no sand had been taken from a sand pit for at least sixteen years before the adoption by a town of a zoning by-law in effect forbidding the removal of sand from the premises for sale, or for about fifteen years thereafter, and that the pit was grown over by brush and small trees, justified a conclusion that a nonconforming use of the pit did not exist at the time of the adoption of the by-law.

Commercial operation of a sand and gravel pit by machinery and equipment customary for such operation, existing as a nonconforming use at the time of the adoption by a town of a zoning by-law and thereafter, was not shown to have been abandoned by the facts that upon the death of the proprietor of the pit his widow, an elderly woman, was unable to continue the business, and that in the ensuing five years only slight use of the pit was made and she disposed of the machinery and equipment.

In a suit in equity by a town against an owner of land to enjoin the removal of sand from the defendant's land for sale in alleged violation of the town's zoning by-law, where it appeared that the removal of sand from a pit on the land by hand was a nonconforming use existing at the time of the adoption of the by-law, a decree permitting the continued removal of sand by hand only and enjoining the use of power equipment for the purpose was too restrictive.

A town, seeking to enforce a zoning by-law, in effect prohibiting the removal for sale of loam, sand and gravel, against the owner of a tract of thirty-three and one half acres on which there were a gravel pit and a sand pit constituting existing nonconforming uses at the time of the adoption of the by-law, was entitled to a decree enjoining the stripping of loam for sale from any part of the premises and the removal of any material for sale from any part of the premises other than the pits.

BILL IN EQUITY, filed in the Superior Court on November 10, 1948.

The suit was heard by *Morton*, J., in March, 1949. Both the plaintiff and the defendants appealed from the final decree.

*R. W. Meserve*, (*J. R. Hally* with him,) for the plaintiff.
*M. H. Cavanagh* & *T. H. Mahony*, for the defendants, submitted a brief.

SPALDING, J. This bill is brought to enforce the town's zoning by-law by restraining the defendants from removing for sale sod, loam, sand and gravel from a tract of land located in the plaintiff town.

The facts appear from findings of the judge and from the evidence, which is reported. The tract here involved, comprising thirty-three and one half acres, was acquired by Sarah J. Glover, the defendants' predecessor in title, in 1925. On September 5, 1934, when the town zoning by-law took effect, the land was placed in a single residence district. The zoning by-law applicable to such districts, so far as material, reads as follows: "Section V. In a single residence district no building or premises shall be used and no building or structure shall be erected which is intended or designed to be used in whole or in part . . . for any industry, trade, manufacturing or commercial purposes" or for other than certain specified purposes which are set forth in the by-law. The by-law further provides that the board of appeals "may under restrictions . . . direct in writing the issuing of the following special permits: . . . (q) The removal of sod, loam, sand, gravel, or quarried stone for sale . . . shall be allowed only if permission of the board of appeals be obtained in accordance with the procedure pro-

vided in paragraph (r) and only under such conditions as the board may impose, but nothing contained in this section shall prevent the continued use of any land for the purpose for which it is used at the time this section takes effect.'' At the time the above by-law was adopted there was a gravel pit comprising an area of about two acres, hereinafter called the large pit. There were also several pits or openings (hereinafter called the Ox Bow Road pits) from which sand had been removed. These were much smaller than the large pit, the largest being about one hundred feet in diameter, and the smallest about thirty feet. These pits were very shallow and at the time of the hearing were covered over by brush and small trees. Sand was taken from these pits around the time of World War I and no use appears to have been made of them thereafter. There is another sand pit about sixty feet in diameter in a meadow near a house (hereinafter called the meadow pit) which is not grown over with brush or trees and from which sand has been taken more recently. From time to time loam has been removed from various portions of the tract.

Prior to the adoption of the zoning by-law, and thereafter, gravel had been removed from the large pit by means of a mechanical shovel operated by gasoline. Other equipment used in connection with the removal and processing of the gravel included a drag cable, power operated screens, washing machinery and pumps. A sand and gravel business was carried on by the husband of Sarah J. Glover until his death on December 5, 1942. Glover was about seventy-eight years old when he died and his wife, who was about the same age, was unable to continue with the business. In the spring of 1943 she began to sell the equipment and continued to do so until 1947 when it was finally disposed of. Some of it had deteriorated from nonuse and lack of care and was virtually useless. From her husband's death until the land was purchased by the defendants, she sold sand from the meadow pit and gravel from the large pit, the value of which was not in excess of $50 in any year. This was purchased by persons who did their own loading. The loading was done by

hand, but on one occasion gravel was loaded, presumably from the large pit, by means of a gasoline powered farm tractor with a shovel attachment.

On May 6, 1948, Mrs. Glover sold the land to the defendants. Thereafter, the defendants made an arrangement with a contractor for the sale and removal of large amounts of gravel daily by means of power operations similar to those which had been used prior to 1942. Shortly after operations were begun under this arrangement they were stopped by the chief of police of the town.

The judge found that the use of the large pit in the manner employed prior to 1942 had been abandoned. A decree was entered permitting the removal of sand and gravel within the limits of the large pit, but only by means of "an ordinary gasoline power farm tractor with shovel attachment," and the removal by hand of sand within the limits of the meadow pit. The removal of material from other parts of the tract was enjoined. The decree further enjoined the use of gasoline shovels, bulldozers, or any other type of power equipment, and the erection of any structures in aid of the removal of sand and gravel. It also restrained the defendants from stripping any part of the premises of loam. The plaintiff and the defendants appealed.

## THE PLAINTIFF'S APPEAL.

It appeared that prior to acquiring title the defendants applied to the board of appeals for a permit to do the following: to remove sand and gravel for sale, to strip the land by means of a bulldozer, and to install such machinery, equipment and buildings "as may be necessary to operate the sand and gravel pit . . . commercially." The board of appeals, after hearing, denied the petition in a decision which stated, among other things, that the right to operate any of the sand and gravel pits on the property as a nonconforming use had been lost by abandonment. No appeal was taken from this decision under G. L. (Ter. Ed.) c. 40, § 30, as amended. The plaintiff's position is that the board's findings as to abandonment were jurisdictional facts essen-

tial to its decision and stood until reversed by the exclusive remedy provided for by law, namely, an appeal to the Superior Court under G. L. (Ter. Ed.) c. 40, § 30, as amended. Conceding that the present suit is not the same cause of action as the proceeding before the board and that the doctrine of res judicata is not applicable to its full extent, the plaintiff urges that the issue of nonconforming use and abandonment is common to both proceedings, and that under the principle of collateral estoppel by judgment what was decided by the board with respect to this issue is conclusive in the present suit.

We need not decide whether that principle (see *Bordonaro v. Vandenkerckhaven*, 322 Mass. 278, 281–282) is applicable to decisions of an administrative tribunal of the sort under consideration here,[1] for even if it is, it has no application here. The doctrine of collateral estoppel by judgment is applicable only where the facts determined in the prior proceedings were essential to the decision. Facts determined which were not essential to the judgment or decision are not conclusive in a subsequent proceeding between the parties. Restatement, Judgments: § 68, comment o. *Cochrane* v. *Cochrane*, 303 Mass. 467, 470. *Sandler* v. *Silk*, 292 Mass. 493, 498. *Wishnewsky* v. *Saugus*, *ante*, 191, 194–195. It appears that some of the uses sought in the application for a permit were outside the scope of any existing nonconforming use. It therefore cannot be said that the board was required to determine the question of abandonment as a jurisdictional fact. All that the board was required to decide in the proceeding before it was whether in its opinion, having in mind the requirements contained in the by-law, the permit should be granted. The board decided that the permit ought not to be granted because the applicants had not met the requirements of subparagraph (r) of § V of the zoning by-law in that they had not shown

[1] See *United States* v. *Kearns*, 115 Fed. (2d) 552, 555 (C. C. A. 10); *United States* v. *Willard Tablet Co.* 141 Fed. (2d) 141, 143 (C. C. A. 7); *Landreth* v. *Wabash Railroad*, 153 Fed. (2d) 98, 100 (C. C. A. 7); Davis, Res Judicata in Administrative Law, 25 Texas L. Rev. 199.

to its satisfaction that the use requested would not constitute a nuisance by reason of noise, vibration and dust and other objectionable features, and would not be injurious to inhabitants of the town or their property.[1] That was all that the board was empowered to decide under the by-law. It could have decided that question without determining the issue of abandonment. What it said about abandonment was supererogatory — a dictum at most — and would not preclude the defendants from litigating that question in the present suit.

## THE DEFENDANTS' APPEAL.

We are of opinion that the decree below was right in enjoining the defendants from removing sand from the Ox Bow Road pits. It does not appear that these pits have been used since World War I, and they are now covered with brush and small trees. We think the judge could have concluded that at the time the zoning by-law took effect no nonconforming use existed with respect to these pits.

But we are of opinion that the decree below was erroneous in restricting the defendants' use of the large pit to the extent that it did. The basis for this restriction was the finding that the more extensive use had been abandoned.[2] It is to be noted that there is no finding that the use itself was

---

[1] Subsection (r) of § V reads in part: "Where special permits by the board of appeals are required under this and other sections, the building inspector or other person designated by the selectmen to issue permits . . . shall issue no permit until so directed in writing by the board of appeals. . . . The applicant shall show to the satisfaction of the board that the use of the premises for which application is made shall not constitute a nuisance because of noise, vibration, smoke, gas, fumes, odor, dust or other objectionable features, and that such use shall not otherwise be injurious to the inhabitants or their property, or dangerous to the public health or safety. When not so satisfied the board shall refuse a permit."

[2] While no case decided by this court has expressly held that a nonconforming use can be lost by abandonment, the doctrine was recognized in *Paul* v. *Selectmen of Scituate*, 301 Mass. 365, 370. It is hardly conceivable that the court would have discussed as it did the correctness of a ruling that there had been no abandonment if the doctrine had no application. Relying on the principles governing the abandonment of easements the court said at page 370, "Abandonment is primarily a question of fact . . . . A mere nonuser would not conclusively show an abandonment." See *Lynn* v. *Deam*, 324 Mass. 607, 609. In other jurisdictions it has been held that a nonconforming use can be lost by abandonment. *Darien* v. *Webb*, 115 Conn. 581. *Beyer* v. *Mayor & City Council of Baltimore*, 182 Md. 444. *Robst* v. *Board of Appeals of Wauwatosa*, 244 Wis. 566. See note 114 A. L. R. 991, et seq.

abandoned.   Down to 1942 Glover had used that pit for obtaining and processing sand and gravel for sale, and in doing so made use of a mechanically operated gasoline shovel and other machinery ordinarily used in pits of that sort.  At his death his widow, who was then elderly, was unable to carry on the business to any considerable extent and by 1947 she had sold all the equipment.  The evidence showed no more than a restricted use for a few years coupled with the sale of the equipment.  We think, considering all of the circumstances, that the evidence fell short of establishing an abandonment of the more extensive use.

The decree provided that the use of the meadow pit was to be limited to the removal of sand by hand.  In our opinion such a limitation was unduly restrictive.  We infer, as apparently the trial judge did, although the evidence is not very clear on the matter, that prior to the adoption of the zoning by-law sand was removed from this pit only by hand. But we do not think that the use of the pit ought thereafter to be limited to that method of removal.  As the Supreme Court of Errors of Connecticut said recently in a well considered opinion, ". . . the fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not exclude it from the category of an 'existing use,' provided these are ordinarily and reasonably adapted to make that use available to the owner, and the original nature and purpose of the undertaking remain unchanged." *DeFelice* v. *Zoning Board of Appeals of East Haven,* 130 Conn. 156, 162.  The nonconforming use in that case was a commercial sand pit.  Prior to the adoption of the zoning ordinance sand was removed only by hand.  The court held that the owner was entitled to use power shovels and similar equipment but that the zoning board was warranted in finding that the owner had departed from the original use in erecting a wet sand classifier which not only excavates and frees the sand of stones as does the dry screening method but washes and assorts it according to size, thus producing a recognized commercial product of enhanced value.  Other cases illustrative of this principle are *North American Build-*

*ing & Loan Association* v. *Board of Adjustment of New Brunswick*, 117 N. J. L. 63, *Ewing* v. *Braun*, 196 So. 571 (Ct. App. La.), and *Marcus* v. *Mamaroneck*, 258 App. Div. (N. Y.) 328. See *Cochran* v. *Roemer*, 287 Mass. 500, 508; *Building Commissioner of Medford* v. *McGrath*, 312 Mass. 461. Compare *Marblehead* v. *Rosenthal*, 316 Mass. 124.

The plaintiff was entitled to have the defendants and those claiming under them enjoined from stripping any part of the premises of loam for sale or from using any portion of the premises other than the large pit and the meadow pit for the removal of any material for sale, and the decree below to the extent that it prohibited these things was right. The defendants could do these things only by extending the nonconforming uses now existing — a course which is not open to them. *Burlington* v. *Dunn*, 318 Mass. 216, 223–224. See *Billerica* v. *Quinn*, 320 Mass. 687, 689–690.

The defendants in support of what is in effect a counterclaim assert that one Salvucci, to whom they had contracted to sell gravel, is holding them responsible in damages for breach of contract, and they argue that they are entitled to reimbursement from the plaintiff for this liability on the ground that they were prevented from performing their contract by the restraining order obtained by the plaintiff and by the conduct of its chief of police. The short answer is that the defendants failed to prove any damages. We do not intimate that, if they had, recovery could be had on the ground relied on.

The final decree is reversed and a new decree is to be entered in conformity with this opinion. The defendants are to have costs of this appeal.

*So ordered.*