STATE of Missouri, ex rel. BEACON COURT, Incorporated, et al. (Relators), Respondents,

v.

J. C. WIND, E. C. Wirtel, and A. A. Grellner, Constituting the St. Louis County Board of Zoning Adjustment, Respondents,

John G. Devine and Fred Weber Contractor, Inc. (Intervenors), Appellants.

Nos. 29777, 29843.

St. Louis Court of Appeals.

Missouri.

Feb. 4, 1958.

Brackman, Oetting & Brackman, Clayton, for appellant John G. Devine.

John B. Sharpe, St. Louis, R. W. Jacobsmeyer, Clayton, for appellant Fred Weber Contractor, Inc.

Francis R. Stout and Richard M. Stout, St. Louis, for respondents.

WOLFE, Commissioner.

This is an action in certiorari against the St. Louis County Board of Zoning Adjustment. The board had granted a permit to operate a quarry in an area zoned for residential purposes. This was done on the theory that the operation would constitute the continuance of a nonconforming use. The owner of the land in question and a corporation engaged in operating the quarry on the land intervened in the circuit court

and sought to sustain the action of the board. Upon a review, the circuit court reversed the board and the intervenors each prosecute an appeal to this court. Both appeals were argued and submitted together and both are here considered.

It was conceded that the quarry in question was within an area zoned for residential purposes. This ordinance became effective on June 13, 1946. The record of the proceedings before the Board of Zoning Adjustment is quite scant. All that is contained in it relative to the testimony given at the hearing is as follows:

" A 1937 Aerial Photo was presented showing the location of the quarry which is approximately one-quarter mile from Pacific, Missouri. Said property is owned by Mr. John G. Devine and has been under lease to Fred Weber Contractor, Inc., since December, 1955. Mr. Devine submitted an affidavit that indicated that the quarry was in operation since 1944 with the same principal machinery as they wish to install at the present time.

"Richard M. Stout, attorney for the opposition, presented a list signed by 40 people. He also exhibited a copy of a lease to the Board Members; Mr. Max, attorney for the defense questions as to whether this is the lease that is on file.

"A witness for the opposition stated that she, Margaret Jane Plagamann, Route 1, Pacific, Missouri, moved there in 1921 and has lived there continuously and that when she first moved there it was all farm land which was later purchased by Mr. Devine and subdivided and sold to these folks that are appearing in opposition to the quarry operation as they consider it a hazard due to the dust and blasting.

"Margaret Jane Plagamann further states that the road to her property has to go past the quarry and that they have pushed some of their debris onto the road. Says she has always used the same road since she has been there. She also says that prior to 1949 the quarry was not there in operation, cannot recall any trucks or blasting; only remembers the condition of a little rock being taken out of there in 1921.

"Mr. Stout exhibits a days sweepings from the floor of one of the residents in the area and also a sample of the rock.

"Mr. William Piskulick, Route 1, Pacific, Missouri, a witness for the opposition states that in May 1956 as a result of the blasting, two of his steers went over the fence and that he called Mr. Weber to report the incident and to date neither Mr. Weber or the Quarry Superintendent has responded to his call. He also called the County Health Commissioner and nothing has been done about it.

"Mr. Weber in reply to Mr. Piskulick's statement says that this is his first time to hear of the complaint and Mr. Stout retorts how could this be that you are first learning of this when we know that your Insurance Company, the Wester Casualty Company has a letter relative to the incident. Mr. Weber acquiesced to this statement. Mr. Weber proceeded to state that to his knowledge, the supposed injurious content of silica in rock is 3% at least and that the rock is now being tested and that while he couldn't say for sure, he feels that he can safely say that it will run less than 4% and possibly even less than 2%."

Attached to the transcript was a mentioned affidavit by John G. Devine which made the following affirmation:

"I, John G. Devine, owner of a tract of land in U. S. Survey 148, Fractional Section 4, Township 43 North, Range 3 East, lying within U. S. Survey 3064, hereby make this affidavit that I purchased this tract about April 12th, 1944. That since May, 1949, a quarry has been operated on these premises. That at the time I purchased the same there

was evidence that a quarry had been operated on the premises for some time prior to my purchase thereof."

In addition to the transcript sent up by the Board of Zoning Adjustment, the property owners who were opposing the action of the board presented other evidence in the circuit court. Mrs. Plagamann, who had testified at the hearing before the board, stated that she lived near the present quarry since 1920 and that it had never been operated as a quarry until 1949.

A Mr. McKeever testified that he had leased the land from Mr. Devine in 1949 and started to quarry limestone from it for agricultural purposes. He only operated in a small way for about three months of each year until 1955. He said that when he started his operation there was no evidence that a quarry had ever been in operation there.

A Mrs. Daisy Horneker, who was seventy-four years of age and had lived near the property in question all her life, testified that her brother had owned the land from 1900 to 1942 and that, during that time, there had never been a quarry upon it. She said some rock had been quarried for a short time in 1896 but none since then. There was other testimony that the operation by Fred Weber Contractor, Inc., was a large operation and that the blasting was four times more powerful than it had been when McKeever was operating the quarry. It was said that there was resulting damage to surrounding property by flying rocks and the accumulation of dust.

The circuit court heard evidence on behalf of the intervenors. Mr. Weber testified that his corporation leased the land to quarry rock to be used as an aggregate for cement in the construction of highways. He said that other than the places where McKeever had been quarrying "there was a place where it looked like there could have been a quarry at one time". Weber stated that his corporation was refused a permit to operate the quarry by the Department of Public Works of St. Louis

County and he appealed to the Zoning Commission.

The owner of the land, John G. Devine, testified that he bought it in 1944. He stated that he ran an advertisement in a newspaper called Missouri Farm Bureau News on January 16, 1946, which was as follows:

"Limestone. Limestone rock. I am the owner of a rock hill, limestone, lying 1600 feet from Highway 66 and the Missouri Pacific Railroad. Would like to get some company or individual interested. Good territory for the sale of limestone or crushed rock. For further information see John Devine, Allenton, Missouri."

He also said that at the time he bought the land there were two depressions which appeared to have been caused by some previous quarry operation.

■ It is first contended by the appellants that they erroneously appealed to the Board of Zoning Adjustment and that that board was without authority to entertain the appeal. They argue that the action of the board in granting the permit was therefore a nullity and that consequently the subsequent proceedings in the circuit court were also void. They reached this conclusion on the ground that the transcript of the Board of Zoning Adjustment does not show that an application for a permit, either written or oral, was ever filed with the Department of Public Works by the appellants, as required by ordinance.

■ Weber testified that his company was denied a permit by the Department of Public Works. That was the reason for his appeal to the Board of Zoning Adjustment. The gist of the evidence was that the Department of Public Works told Weber they could not issue the permit and told him that he would have to go to the Board of Zoning Adjustment. There is a presumption that public officers have properly discharged their duties in the absence of proof to the contrary. Neidert v. Terrill, Mo.

App., 215 S.W.2d 745; *Wiget v. City of St. Louis,* 337 Mo. 799, 85 S.W.2d 1038, 100 A.L.R. 1284. The only conclusion that can be drawn from the evidence is that the Department of Public Works did consider and deny the application. The fact that the applicant made the same request of the Board of Zoning Adjustment does not alter the nature of the proceedings there. It was an appeal from the refusal of the permit by the Department of Public Works. Despite the present contention that all that has heretofore transpired should be declared a nullity and that they should be allowed to start seeking the permit anew, the appellants did proceed properly and the point is without merit.

■ After hearing the evidence and reviewing the transcript of the proceedings before the Board of Zoning Adjustment the circuit court expressed doubt about its right to consider anything other than the transcript before it. Confining itself to the evidence as summarized in the transcript and the affidavit of John Devine, which was attached to it, the court in a memorandum opinion found that the evidence was not sufficient to support a finding that a nonconforming use existed at the time the ordinance became effective. It is now asserted by the appellants that the court should have considered all of the testimony before it and that it erred in not so doing. Section 22, Article V, of the Constitution V.A.M.S., states:

"All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

This section was implemented by Chapter 536, RSMo 1949, V.A.M.S., and the amendments thereto. There was also enacted Section 64.120 RSMo 1949, V.A.M.S., relating to the review of orders of county boards of zoning adjustment providing that persons aggrieved by the decision of any county board of adjustment may seek certiorari in the circuit court "for review of the data and records acted upon or it may appoint a. referee to take additional evidence in the case. The court may reverse or affirm or may modify the decision brought up for review."

In *Kansas City v. Rooney,* 363 Mo. 902, 254 S.W.2d 626, which was an opinion by the Supreme Court en banc, the court had before it an appeal to the circuit court from a ruling of the county court. It was held that the county court was an administrative body and came under the constitutional provision for review of orders of administrative agencies. It went on to hold that the constitutional provision required no legislation to put it into effect and that it limited the review to the sole question of whether or not the decision from which the appeal was taken, was supported by competent and substantial evidence upon the whole record. Having reached this conclusion the court then held that all previous statutes for such reviews were amended by substitution of the provision of the Constitution.

In *State ex rel. St. Louis Public Service Co. v. Public Service Commission,* 365 Mo. 1032, 291 S.W.2d 95, the court overruled the Rooney case. and stated that the constitutional provision merely provided a minimum standard for judicial review and did not mean that a broader scope may not be prescribed by statute. It follows that Section 64.120 RSMo 1949, V.A.M.S., is still in force and effect and that the reviewing court may upon certiorari hear evidence to determine what evidence was before the Board of Zoning Adjustment and other evidence that may touch upon the legality of the hearing held by the board.

■ Considering the evidence presented to the board the occurrences there related started in 1944 when John Devine bought

the land in question. At that time there was no quarry upon it. His affidavit was of no value as evidence. Since the hearing before the board the law has been changed and it is now provided under Section 536.-070, as amended by the Laws of 1957, p. ——, S.B.No.176, that affidavits may be used providing certain procedure set out in the section is followed. If this had been in effect at the time it would have been of no value to the appellants for the affidavit presented no facts bearing upon the issues. It stated that "there was evidence that a quarry had been operated on the premises prior to my purchase thereof". This was a mere conclusion and not a statement of any fact. It was therefore valueless. On June 13, 1946, the ordinance zoning the property as residential went into effect and no quarry operation was started until 1949.

■ If we consider only the proper evidence set out in the board's transcript of the hearing, the nearest we can come to a quarry operation prior to the effective date of the ordinance is the statement by two witnesses that some rock had been taken out in 1921. This would have been twenty-five years prior to the passage of the ordinance.

The appellants place reliance upon the testimony of John Devine in the circuit court and contend that the court erred in not considering it. Devine testified that he advertised the land as suitable for a quarry in January of 1946. The fact that he intended to use it as such is no proof of an existing use. Chayt v. Board of Zoning Appeals, 177 Md. 426, 9 A.2d 747. Nor would proof that at some period quite remote from the passage of the ordinance the land was used as a quarry prove an existing nonconforming use. De Felice v. Zoning Board of Appeals of Town of East Haven, 130 Conn. 156, 32 A.2d 635, 147 A.L.R. 161; Town of Wayland v. Lee, 325 Mass. 637, 91 N.E.2d 835.

■ The use must be one existing at the time the ordinance becomes effective and there was no evidence whatsoever either before the board or the circuit court that could support appellants' contention that the use did exist. The court did not err in refusing to consider the evidence mentioned, for it did not go to prove what evidence was before the board, nor any fact touching upon the legality of the hearing. If it had been considered by the circuit court, the results reached would have been the same, and the trial court so stated.

For the reasons set out above, the circuit court properly set aside the board's order granting a permit for the operation of a quarry and its judgment should be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

RUDDY, P. J., and MATTHES and ANDERSON, JJ., concur.