BOARD OF SELECTMEN OF BLACKSTONE & another[1] *vs.*
CLAYTON TELLESTONE.

Worcester.    April 15, 1976. — May 17, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Zoning,* Nonconforming use, Enforcement.

In a suit in equity under G. L. c. 40A, § 22, as in effect prior to St. 1975,
  c. 808, § 3, by a town to enforce its zoning by-law, it was held that
  certain increases, after the adoption of the by-law, in nonconforming
  uses of the defendant's premises antedating its adoption did not
  constitute improper extensions of such uses, and that the judge was
  in error in limiting the extent to which such uses could be continued
  to the "level" existing at the time of adoption of the by-law. [313-
  316]

BILL IN EQUITY filed in the Superior Court on April 11,
1973.

The suit was heard by *Travers,* J.

*Jacob Oppewal (Oscar J. Ryan* with him) for the de-
fendant.

*Stephen P. Weitz* for the intervener, David Morin.

HALE, C.J.    This is an appeal from a final decree of
the Superior Court entered on a bill in equity brought
by the town of Blackstone (town) to enforce its zoning
by-law. G. L. c. 40A, § 22, as in effect prior to St. 1975,
c. 808, § 3.

The defendant operates various businesses on a three
acre lot on Mendon Street in the town. The lot contains
a 30′ x 50′ garage erected in 1963 or 1964 and is located in
an area zoned for residential use. Prior to September 12,
1968, the effective date of the town's first zoning by-law,
the defendant had used his premises for the storage of
school buses, trucks, and snowplows; welding and some

_____

[1] David Morin, intervener.

limited metal fabrication; truck repairs; the storage of junk cars; and the sale of used cars. The premises had also been used for the cutting and retail sale of cordwood. Since those activities antedated the town's first zoning by-law, both the by-law and G. L. c. 40A, § 5 (as in effect prior to St. 1975, c. 808, § 3),[2] allow the defendant's activities to be continued as nonconforming uses.

After the effective date of the by-law the defendant erected a 12′ x 50′ corrugated steel "lean-to" along one side of the existing garage as an adjunct to it. That structure was subsequently removed. On September 23, 1972, the defendant obtained a building permit to construct an addition to the garage. While construction was underway the defendant was notified that the selectmen had voted to order the building inspector to revoke the permit. On November 30, 1972, the defendant was informed by the selectmen that he was in violation of the town's zoning by-law and was ordered by them to restore the property to its pre-September 12, 1968, condition. The defendant did not comply with the order; instead, he completed the addition.[3]

On April 11, 1973, the town brought a bill in equity seeking an injunction prohibiting the defendant from conducting business activities on the lot in question not protected as nonconforming uses and an order for the removal of the addition erected in violation of the town's zoning by-law. One David Morin, whose property abuts the lot in question, was allowed to intervene as a party plaintiff.

---

[2] General Laws c. 40A, § 5, read in pertinent part:

"Except as provided in section eleven, a zoning ordinance or by-law or any amendment thereof shall not apply to existing buildings or structures, nor to the existing use of any building or structure, or of land to the extent to which it is used at the time of adoption of the ordinance or by-law, but it shall apply to any change of use thereof and to any alteration of a building or structure when the same would amount to reconstruction, extension or structural change, and to any alteration of a building or structure to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent."

[3] The addition has a floor area equal to that of the garage.

After a hearing the trial judge made "Findings, Ruling and Order" and later adopted his findings as a report of material facts. On March 18, 1974, a final decree was entered which ordered the removal of the addition to the garage. The court also enjoined the defendant from conducting upon the premises any business use not allowed by the zoning by-law of the town except for the following activities which he held to be nonconforming uses: the maintenance, repair, and storage of not more than three school buses; the maintenance, repair, and storage of not more than four trucks and snowplows used with them; storage and pumping of gasoline for use in the trucks and buses; conduct of a used car business; conduct of a handyman business (excluding metal fabrication work) within certain hours by not more than one person; and the storage of junk metal, pieces of machines, parts of trucks and autos. From that decree the defendant appeals.[4]

1. In its final decree the court placed specific limitations on the numbers of buses, trucks and employees which could be stored or employed on the premises. The defendant contends that the court was without authority to limit the volume, quantity or extent of the nonconforming uses to the levels of use before September 12, 1968.

In *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648 (1973), the Supreme Judicial Court summarized previous decisions concerning the scope of protection provided by G. L. c. 40A, § 5. It also set forth a three-part test for determining whether or not a use of property is permissible as a nonconforming use: "(1) Whether the use reflects the 'nature and purpose' of the use prevailing when the zoning by-law took effect ... [citations omitted]. (2) Whether there is a difference in the quality or character, as well as the degree, of use ... [citations omitted]. (3) Whether the current use is 'different in kind in its effect on the neighborhood' ... [citation omitted]." 363

---

[4] The defendant's appeal from the denial of his plea in abatement is not argued and hence is considered waived. Mass.R.A.P. 16(a)(4), as amended effective February 24, 1975, 367 Mass. 921.

Mass. at 653, quoting from *Bridgewater* v. *Chuckran*, 351 Mass. 20, 23 (1966).

The judge erred when he failed to apply this three-part test to the facts but instead made a general finding that "the defendant greatly expanded his business at Mendon Street — both in character, intensity and area." He ruled that "all nonconforming uses which presently exceed in volume, quantity, intensity or extent that which was found to have been carried on up to September 12, 1968, . . . [are] ordered to be reduced and restored to . . . [their] previous level."

We must now apply the three-part test to the facts found by the trial judge in this case. See *Powers* v. *Building Inspector of Barnstable*, 363 Mass. at 662-663; *First Crestwood Corp.* v. *Building Inspector of Middleton*, 3 Mass. App. Ct. 234, 236 (1975). We discuss only those nonconforming uses which the parties have argued.

We have before us certain photographic and documentary exhibits as well as the significant portions of the transcript which have been designated by the parties. On appeal the judge's findings of fact, including inferences of fact based on credibility, will be upheld unless clearly erroneous. Mass.R.Civ.P. 52 (a), 365 Mass. 816 (1974). *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976). We think that the judge's general finding is without support in the record and thus clearly erroneous.

Applying the test enunciated in *Powers* to the facts, we hold that the increases in the defendant's operations did not constitute improper extensions of the existing nonconforming uses.

First, we must consider whether the current uses which are in dispute reflect the nature and purpose of such uses as they obtained when the zoning by-law became effective. The trial judge found that the premises are currently being used for the storage, maintenance and repair of trucks and buses and for the conduct of the defendant's handyman business (including welding). Those are the same uses to which the premises were put prior to the enactment of zoning. There has been no change in the nature or purpose

of any of those nonconforming uses. See *Building Commr. of Medford* v. *McGrath*, 312 Mass. 461, 462 (1942); contrast *First Crestwood Corp.* v. *Building Inspector of Middleton*, 3 Mass. App. Ct. at 236.

Second, we consider whether there is a difference in the quality or character, as well as in the degree of each of the disputed uses. The judge found an increase in the numbers of trucks and buses on the premises. But his ultimate finding that the defendant "expanded his business . . . in character" does not find support in the record. Both before and after the enactment of the zoning by-law, the defendant had contracts with the town to provide school buses and to plow snow with his own trucks and equipment. The trucks and buses have been stored and maintained on the premises at all material times. This does not represent a change in character of any use. Nor does the increase in welding activity constitute a change in the character of a use, because both before and after the enactment of the zoning by-law, the defendant welded and fabricated on a job-by-job basis.[5] The character of a use does not change solely by reason of an increase in its volume (*Medford* v. *Marinucci Bros. & Co. Inc.* 344 Mass. 50, 60 [1962]), or because the hours of operation have expanded (*Powers* v. *Building Inspector of Barnstable*, 363 Mass. at 659-660; cf. *McAleer* v. *Board of Appeals of Barnstable*, 361 Mass. 317, 323-324 [1972]), or because improved equipment is used (*Wayland* v. *Lee*, 325 Mass. 637, 643 [1950]; *Morin* v. *Board of Appeals of Leominster*, 352 Mass. 620, 623-624 [1967]; *Berliner* v. *Feldman*, 363 Mass. 767, 775 [1973]).[6]

[5] Although the judge found that the defendant's welding activities increased to include, among other things, extensive fabricating of fire escapes and truck bodies, there was no change in the character of the business. He continued to do jobs to order and did not engage in an assembly-line production of fire escapes. In fact, at the time of trial, the welding activity had subsided.

[6] We also think that the judge's finding that the defendant's business expanded in area is without support in the record. The only evidence with regard to the portion of the three acre lot used for the defendant's business activities prior to 1968 was that there had been enough junk cars accumulated "to fill up the majority of the area."

The third part of the test is whether a present use is different in kind in its effect on the neighborhood. The judge made no finding on the effect of the defendant's activities on the neighborhood. Even assuming, as the intervener suggests, that an increase in use can be so large as to constitute a change in kind (compare *Cullen* v. *Building Inspector of North Attleborough,* 353 Mass. 671, 676 [1968]), we conclude on the record before us that the effect of any use on the neighborhood is not different in kind.[7]

2. The defendant also disputes that part of the final decree which ordered the removal of the addition to the garage. He contends that the extreme remedy of a mandatory injunction ordering removal was not appropriate. When a structure has been erected in violation of a zoning ordinance or by-law, relief has normally taken the form of a simple injunction against the continuation of the unlawful use. *Sterling* v. *Poulin,* 2 Mass. App. Ct. 562, 564 (1974), and cases cited. However, where it is clear that no portion of the structure in question can be used for any permitted purpose, a court may order its removal. *Id.* at 564. In each case it must be determined whether the structure may legally be used (or modified and legally used) for a use permitted by the applicable ordinance or by-law. *Stow* v. *Pugsley,* 349 Mass. 329, 334, 335 (1965). *Sterling* v. *Poulin,* 2 Mass. App. Ct. at 965.

The trial judge did not address himself to that question in his findings and rulings, and we are unable to conclude from the record before us whether the existing structure (or the structure as modified) may be put to any permitted used. It is doubtful whether the defendant can demonstrate that the structure can be so used, because the addition would either have to be used for residential

---

[7] The judge found that "[t]he welding work and trucks and equipment present have caused some noise, fumes and dust, and flashing of the arcs." He did not find, however, that such conditions increased in severity, had an effect different in kind upon the neighborhood, or constituted a nuisance. Nor would the evidence have permitted such a finding.

purposes or a special permit would have to be obtained from the board of appeals pursuant to § 2330 of the zoning by-law,[8] for the extension of a nonconforming use. It does not appear that the defendant would currently be eligible for a special permit since the floor area of the addition is greater than fifty per cent of the floor area of the garage. However, a question of fact is presented, and it should initially be considered and decided by the trial judge. *Building Inspector of Falmouth* v. *Haddad,* 369 Mass. 452, 459-460 (1976). Therefore, the case must be remanded to the Superior Court for further proceedings.

The trial court is to hold such further hearings as it may deem necessary to enable it to determine whether all or some part of the addition may be used for any use or uses permitted by the zoning by-law. If the court determines that it may be so used, it shall allow the defendant a reasonable amount of time within which to apply for and obtain any permits or authorizations necessary to bring the structure (or the structure as modified) into compliance with the zoning by-law. If the defendant fails to proceed, within such reasonable time as may be set by the Superior Court, to file any appropriate applications or to take whatever steps may be necessary to alter the structure pursuant to such permits or authorizations, the court may, after a hearing, order the removal of the addition. *Building Inspector of Falmouth* v. *Haddad,* 369 Mass. at 459-460.

The final decree is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[8] Section 2330 reads: "Extension — An increase in the area or extent of the nonconforming use of a structure or land may be made on Special Permit from the Board of Appeals, up to a fifty per cent increase in the non-conforming [*sic*] floor area or land used at the time the use became nonconforming."